# Thomas MacKellar v. Jacob J. Seeds, Appellant.

*Appeals—Practice, Superior Court—Case as considered below.*
Appellate courts will not take into account matters not submitted on the trial; and all cases must be treated on appeal as they were tried below.

*Road law—Plotting private way—Act of 1893.*
Private property cannot be taken for public use through evasive enactments. The plotting of a street by the board of surveyors and the placing of it on the plan of public streets does not make it a public street in fact or intent, and no such legal effect is to be implied from the Act of May 23, 1893, P. L. 123.

Argued Dec. 13, 1898. Appeal, No. 73, Oct. T., 1898, by defendant, from judgment of C. P. No. 2, Phila. Co., June T., 1896, No. 273, on verdict for plaintiff. Before Rice, P. J., Orlady, Smith, W. W. Porter and W. D. Porter, JJ. Affirmed. Opinion by Smith, J.

Trespass. Before Sulzberger, J.

It appears from the record that this was an action of trespass to recover damages because the defendant opened a door from the rear of his premises into a ten-foot wide alley or court, extending westward and then northward by a street, alley or court, seventeen feet or more wide opening into Cherry street between Sixth and Seventh streets, in the city of Philadelphia. The plaintiff was the owner of property holding an easement on said alley. By the Act of May 23, 1893, P. L. 123, councils were authorized to place on the city plan of public streets all streets which were laid out and opened prior to June 6, 1871, and which were less than thirty feet in width or had dead ends, etc. In pursuance to this act councils of the city of Philadelphia by ordinance of March 31, 1894, page 134, directed the placing on the city plan of "Brinkley Place from Cherry street south with extensions running east and west." In pursuance to the Act of June 6, 1871, P. L. 1353, the board of surveyors confirmed the plan placing the said Brinkley place, as required by the said ordinance, on the city plan. This plotting included the ten-foot wide alley in the rear of plaintiff's property. After the confirmation of the plan defendant made the opening into said court of which the plaintiff complained. The court below directed a verdict for the plaintiff in the sum of $5.00.

Verdict and judgment for plaintiff for $5.00. Defendant appealed.

*Error assigned* among others was in directing a verdict for plaintiff.

*James Alcorn*, with him *Oliver E. Shannon*, for appellant.— The act of 1871 invested the board of surveyors with full authority finally to confirm all plans or revisions of plans of the said city, after the same had been made by direction of the councils thereof.

The act of 1893 authorizes the plotting in cities of the first class of narrow, blind or irregular streets and the ordinance of 1894 in pursuance of the act of 1893 authorizes the plotting of Brinkley place with its extensions east and west, and the board of surveyors were therefore directed to plot Brinkley place, provided they were convinced by evidence that the said Brinkley place or street had been laid out or opened prior to June 6, 1871, as required by the act of 1893. No appeal having been taken from the order of confirmation it is conclusive and is res adjudicata : Arch Street, 10 Phila. 117 ; Twenty-eighth Street, 102 Pa. 140 ; Duhring's Appeal, 10 Phila. 181.

By the act of 1893, upon the plotting, the streets became public streets. There was nothing further required to be done, and if the appellee, or any other parties were injured, they had their remedy against the public by a jury of view to assess the damages.

*John Marshall Gest*, for appellee.—The claim made by the appellant in his paper-book that the action of the board of surveyors is quasi-judicial and conclusive and is res adjudicata and cannot be attacked collaterally is untenable.

The act of May 23, 1893, was undoubtedly framed with a view to existing conditions in the city of Philadelphia and was intended to enable the city to place on its plan many legally opened streets used as such which were less than thirty feet in width, or which had dead ends, etc. Its purpose was not to interfere or alter in the slightest degree the general system already in use and well known for the opening of streets as distinguished from the merely placing streets already opened upon the official plan of the city.

To authorize councils to put certain streets upon the public plans is a very different thing from a legislative enactment that such streets when placed upon the city plan shall thereby become public highways: Railway Co.'s Appeal, 81* Pa. 91. Otherwise the act would confer a power to take private property for a private use and would be unconstitutional and void under § 3, art. 3, Const. of Pa.: Sharpless v. Phila., 21 Pa. 147; Palairet's Appeal, 67 Pa. 479; Waddell's Appeal, 84 Pa. 90.

OPINION BY SMITH, J., April 17, 1899:

The appellant has presented to this court alleged documentary evidence not offered on the trial. It is offered here under the pretense that it may aid us in our determination of the case. It is presumably well known to the profession that this is an appellate court, without original jurisdiction, and can only review cases, not try them in the first instance. This is the limit of our authority, and it is useless to press for consideration matters beyond our field of inquiry. Neither the Supreme Court nor this court will take into account matters not submitted on the trial; and both courts have often said that cases must be treated on appeal as they were tried below.

Confining our examination to the record as made up, we find the question to be whether the plaintiff's right of property has been invaded by the defendant. The subject of contention is the use of a way or court inside the building line, and abutting on the premises of the parties. The plaintiff avers it to be a private way and the defendant alleges it to be a public way. It is conceded that the plaintiff, by deed dated June 23, 1893, acquired the right to use the way, and that the defendant's claim is based on the contention that, by city ordinance approved March 31, 1894, it became a public way. The evidence shows, without contradiction, that prior to this ordinance Brinkley place was a private way and, therefore, the single question for the court below and for this court is whether it became a public way by virtue of the ordinance. This ordinance was passed in pursuance of the act of May 23, 1893, which was enacted with reference to the act of June 6, 1871, and this latter act in turn modified the act of April 21, 1855. The act of 1893 provides that all streets laid out and opened prior to June 6, 1871, which are less than thirty feet in width, or

have dead ends, or do not extend in a straight line from one street to another, may be placed on the city plan, whereupon such streets shall become public streets.   It is argued that under this statute Brinkley place became a public highway upon its being plotted and placed on the city plans by the board of surveyors; that this power was given to the board of surveyors by the Act of April 21, 1855, P. L. 264, and was continued by the acts of June 6, 1871, and May 23, 1893.   There is nothing in the act of 1855 or that of 1871 which purports to make streets or ways thus placed on the city plan public highways of the city, by the mere act of placing them there.   An examination of the act of 1855 shows very clearly that this was not intended.   The seventh section provides " that whenever councils shall deem the public exigency to demand it, they may order by ordinance any street laid upon any of the public plans of the city to be opened," on giving notice and security to the owners.   The act thus recognizes the ownership as remaining a private right until otherwise divested, notwithstanding the owner's land has been plotted and recorded in the public plan as provided by the statute.   The act of 1855 contains nothing further pertaining to this point, and the act of 1871 throws no light on the subject.   Turning to the act of 1893 we find that streets laid out and opened may be placed on the city plan, " whereupon such streets shall become public streets."

Our inquiry is, therefore, whether this part of the act is constitutional so far as it relates to a private alley, court or way, or can it be harmonized with article 3, section 3 of that instrument.   Its title is as follows: " An act to authorize councils of cities of the first class to place on the plans of public streets of such cities all streets laid out and opened prior to June 6, 1871, and which are less than thirty feet in width, or have dead ends, or do not extend in a straight line from one street to another."   The title indicates that the councils may place certain streets on the plan of public streets, which could not have been placed there under pre-existing legislation; but it suggests no intent to make private streets, courts or ways so entered, ipso facto, public streets.   This purpose first appears in the body of the act, if at all, and bears no necessary or logical relation to the title.   " Public streets " and " streets " are mentioned, and it is not to be presumed that private courts or ways

were contemplated.  The terms employed reasonably indicate highways in which the public has rights, rather than private property in which it has none.  The clause of the constitution providing that "No bill except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title," requires us to construe this act as applying to public streets and excluding from its purview all private ways, alleys and courts.  This interpretation is consistent with the title and purpose of the act and brings the whole into harmony with the fundamental law.  A contrary construction would make it embrace an important subject not clearly expressed in the title.  Private property cannot be taken for public use through evasive enactments.

The plotting of a street by the board of surveyors, and the placing of it on the plan of public streets under this statute, does not make it a public street in fact or intent; and it has been said in analogous cases that no such legal effect can be implied from that act: Com. v. Railroad Company, 135 Pa. 256 ; Com. v. Kline, 162 Pa. 499.  What we have said necessarily decides the main question in the case, and it is unnecessary to touch upon the other subordinate features referred to in the argument.

The judgment is affirmed.